

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>KELMER DONALD BECK,<br><br>        Debtor. | Case No. 13-1825<br>Chapter 13<br><br>Re: Docket No. 37, 38 |

### ORDER VALUING COLLATERAL

      Chapter 13 debtor Kelmer Donald Beck wants to avoid the liens on his residence claimed by the Internal Revenue Service and the Association of Apartment Owners of Ala Wai Townhouse (the "AOAO"). Considering the evidence of value and the arguments offered at an evidentiary hearing on September 8, 2014, I will grant his motion.

      A chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest[1] in real property that is the debtor's

---

    [1] I assume without deciding that the AOAO has a "security interest" in the condominium. *See* 11 U.S.C. §§ 101(51), (53).

principal residence . . . ."[2] The exception means that a chapter 13 debtor cannot reduce the amount of a security interest in the debtor's residence to the value of the property less senior liens (a process sometimes called "strip down").[3] But if the security interest is a junior lien, and the property is worth less than the amount of the senior liens, the debtor may entirely avoid (*i.e.*, "strip off") the junior lien.[4]

Mr. Beck owns a leasehold condominium in Waikiki in the Ala Wai Townhouse project. His lease rent is low ($75.84 per month) but the remaining lease term is short (only about fifteen years, until June 15, 2029), and he has no right to extend the lease term.

The leasehold condominium is subject to a first mortgage securing a debt of about $186,383.88. Mr. Beck and the AOAO agree that this lien has priority over the AOAO's claims.

The IRS has filed a proof of claim for unpaid income taxes for the calendar years 2006 through 2012. According to the proof of claim, $5,575.25 of the IRS claim is secured, $2,454.30 is priority unsecured, and $11,065.89 is nonpriority unsecured. No one has objected to the IRS claim, so it is deemed allowed.

The AOAO claims that, as of the date of bankruptcy, Mr. Beck owed the

---

[2] 11 U.S.C. § 1322(b)(2).

[3] *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993).

[4] *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002).

U.S. Bankruptcy Court - Hawaii    #13-01825    Dkt # 84    Filed 09/12/14    Page 2 of 5

AOAO maintenance fees, late charges, and attorneys' fees of $6,182.83. The parties agree that the AOAO's claims are secured but disagree about the relative priority of the IRS and the AOAO claims.

Thus, if the leasehold condominium is worth less than $186,383.88 (the balance due on the first mortgage) plus whatever portion of the IRS' secured claim is senior to the AOAO's claims, Mr. Beck can strip off the AOAO's lien. If not, and if the AOAO's lien is a "security interest," Mr. Beck cannot modify that lien.

Mr. Stellmacher, an appraiser retained by the AOAO, opines that the leasehold condominium is worth $190,000. Mr. Walther, who is Mr. Beck's retained appraiser, thinks it is worth $150,000. Both appraisers are experienced, well qualified, and highly reputable, and both of their reports are thorough and careful.

Although the appraisers reach different conclusions, they agree that valuing this property is difficult mostly because of the combination of low lease rent and a short lease term.

Only one of the comparable properties identified by either appraiser has lower lease rent ($28 per month, compared to $75.84 for the subject property). The next lowest lease rent is $204.74 per month, not quite triple the subject property's rent. Adjusting for these differences is difficult. Mr. Stellmacher says that most buyers are not sophisticated enough to evaluate these differences systematically and that they

U.S. Bankruptcy Court - Hawaii   #13-01825   Dkt # 84   Filed 09/12/14   Page 3 of 5

react to such differences "more on emotion than calculation."[5] Mr. Walther does not challenge this statement; he attempted to address the problem by "bracketing", that is, by choosing comparable sales that had lower and higher lease rents.

Only two of the comparable transactions selected by the appraisers had lease terms that were shorter than the subject's. Mr. Walther selected those transactions precisely for that reason, so he could "bracket" Mr. Beck's unit. But those properties (both of which are units in the Kahala Beach Apartments) are dramatically different from Mr. Beck's unit in nearly every other respect. They are in a more desirable neighborhood, have better amenities, and are otherwise superior to Mr. Beck's unit. These transactions are useful, however, because they prove the common-sense proposition that, as the lease term gets shorter, the value of the lease falls dramatically.[6]

The appraisers also made different adjustments to reflect the condition of the property. Mr. Walther adjusted each comparable sale individually to reflect differences in condition. Mr. Stellmacher did the same thing but also made an across-the-board deduction of $3,000 to reflect the estimated cost of correcting deferred maintenance and bringing Mr. Beck's unit up to market standards. The items that Mr. Stellmacher believes must be fixed include "a broken range, leaky tub, cracked

---

[5]Ex. A at 17.

[6]Dkt. 76 at 7-8.

4

U.S. Bankruptcy Court - Hawaii    #13-01825    Dkt # 84    Filed  09/12/14    Page 4 of 5

jalousie windows, old paint, and stained carpets."[7] Mr. Beck has offered evidence of the cost of various repairs to the unit.[8] The scope of work contemplated by Mr. Beck's estimates is broader than the work that Mr. Stellmacher thinks is necessary (for example, Mr. Beck's estimates cover a more or less complete renovation of the kitchen and bathroom). Nevertheless, the evidence provided by Mr. Beck indicates that Mr. Stellmacher's $3,000 estimate is probably too low.

Mr. Stellmacher's valuation of $190,000 exceeds the first mortgage balance by only about $3,700. I find that Mr. Stellmacher has underestimated the effect of the short lease term and the cost of repairs, and that as a result his valuation is too high. I find that Mr. Beck's interest in the condominium is worth less than $186,300, and therefore I conclude that Mr. Beck is entitled to avoid the AOAO's prepetition secured claims.[9]

Counsel for Mr. Beck shall submit proposed orders granting his motions and confirming his plan.

---

[7] Ex. A at 12.

[8] Ex. 13.

[9] This finding means that I need not decide the relative priority of the IRS and AOAO claims.